## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re YES! ENTERTAINMENT, | : |
| Debtor. | : Case No. 99-273 (MFW) |
| EXECUTIVE SOUNDING BOARD ASSOCIATES, As Trustee of the YES! Entertainment Corporation Liquidating Trust, | : : : Adversary No. 03-50982 (MFW) |
| Plaintiff, | : |
| v. | : |
| WHAM-O, INC., | : |
| Defendant. | : |

## NOTICE OF APPEAL PURSUANT TO FEDERAL
## BANKRUPTCY PROCEDURES 8001 AND 28 U.S.C. SECTION 158(a)(3)

Defendant Wham-O, Inc. ("Defendant"), pursuant to 28 U.S.C. 158(a)(3) and Rule 8001

of the Federal Rules of Bankruptcy Procedure, hereby appeals to the United States District Court

for the District of Delaware from the Order and Memorandum Opinion entering judgment in

favor of the Trustee of Yes! Entertainment Corporation for royalties due under the Agreement

dated February 27, 1998 for the Chuck E. Cheese's pizza maker and for all Baskin-Robbins

products and accessories except the Baskin-Robbins ice cream maker at the rate of 2% of net

sales for seven years from the date of the Agreement issued by the United States Bankruptcy

Court for the District of Delaware on January 6, 2006.  A copy of the Order [D.I. 43] and

Memorandum Opinion [D.I. 42] is attached hereto as Exhibit A and B, respectively.

The parties and their counsel of record are:

| **Party** | **Counsel** |
|---|---|
| Executive Sounding Board as Trustee of the Yes! Entertainment Corporation Liquidating Trust | Christian J. Singewald<br>White and Williams LLP<br>824 N. Market Street, Suite 902<br>Wilmington, DE 19801<br>(302) 467-4510 (telephone)<br>(302) 467-4547 (fax) |
| | Michael N. Onufrak<br>White and Williams LLP<br>1800 One Liberty Place<br>Philadelphia, Pennsylvania 19103-7395<br>(215) 864-7000 (telephone)<br>(215) 864-7123 (fax) |
| Wham-O, Inc. | Denise S. Kraft<br>Edwards Angell Palmer & Dodge LLP<br>919 N. Market Street, 15th Floor<br>Wilmington, DE 9801<br>(302) 425-7106 (telephone)<br>(302) 777-7263 (fax) |
| U.S. Trustee | Office of the United States Trustee<br>844 King Street, Room 2207<br>Lockbox 35<br>Wilmington, DE 19801 |

Dated: January 17, 2006

EDWARDS ANGELL PALMER & DODGE LLP

Denise S. Kraft (#2778)
919 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 425-7106 - telephone
(302) 777-7263 - facsimile

Counsel for the Defendant
Wham-O, Inc.

WLM_503736_1/DKRAFT

.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
In re:                          )
                                ) CHAPTER 11
YES! ENTERTAINMENT CORPORATION, )
                                )
          Debtor.               ) Case No. 99-273 (MFW)
_____  )
                                )
EXECUTIVE SOUNDING BOARD         )
ASSOCIATES, as Trustee of the   )
Yes! Entertainment Corporation  )
Liquidating Trust,              )
                                ) Adv. No. 03-50982 (MFW)
          Plaintiff,            )
                                )
     v.                         )
                                )
WHAM-O, INC.,                   )
                                )
          Defendant.            )
_____  )
```

**<u>OPINION</u>**[1]

    Before the Court is the Complaint of Executive Sounding Board Associates, the liquidating trustee of the Yes! Entertainment Corporation Liquidating Trust ("the Trustee"), against Wham-O, Inc. ("Wham-O") seeking to collect royalties allegedly owed. After trial on the merits and briefing, the Court enters judgment in favor of the Trustee, in part.

_____

    [1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

I.    <u>BACKGROUND</u>

Prior to its bankruptcy petition, Yes! Entertainment Corporation ("the Debtor") was in the toy development and manufacturing business.  The Debtor was one of the first in the business to sell branded food preparation toys based on real food products.  Its first product, the Mrs. Field's[2] cookie oven, was very successful.

On February 27, 1998, the Debtor and Wham-O executed an asset purchase agreement ("the Agreement") pursuant to which Wham-O purchased from the Debtor certain brand names, trademarks, inventory, equipment, packaging materials and related intellectual property associated with certain of the Debtor's toy products.  Related contracts (including licensing agreements) were also assigned by the Debtor to Wham-O.  The purchase price included a cash increment and royalties on sales for seven years. The Agreement was subsequently amended on March 20, 1998, to limit the obligation to pay royalties on one of the products (the Baskin-Robbins ice cream maker) to three years.

Wham-O had been incorporated in November 1997 to acquire certain toy assets from Mattel, Inc.  Prior to its purchase of the assets from the Debtor, Wham-O had no involvement in the food preparation toys sector.

---

[2]  The issues presented in this case relate to many trademarks and tradenames.  For ease, the Court will not indicate registered trademarks in this Opinion.

On February 9, 1999, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  On Motion of the secured lender, Infinity Investors, Ltd., the Court appointed a chapter 11 trustee.  On December 11, 2001, the Court confirmed the liquidating plan filed by the trustee and Infinity.  Under the plan, Executive Sounding Board Associates was named the Trustee.

On February 25, 2003, the Trustee filed suit against Wham-O for royalties allegedly due under the Agreement.  On June 15, 2004, the Trustee filed a Motion for Partial Summary Judgment. After briefing and oral argument, the Court entered judgment for the Trustee in the amount of $51,359.69 on the Motion for Partial Summary Judgment.  Thereafter, trial was held on October 22, 2004, on the remaining issues in dispute.  Briefing is complete and the matter is ripe for decision.

II.  <u>JURISDICTION</u>

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A), (E) & (O).

III.  <u>DISCUSSION</u>

Four issues remain in dispute: (1) whether the Trustee is entitled to royalties on the Chuck E. Cheese's pizza maker sold

3

by Wham-O; (2) whether accessories and other Baskin-Robbins products are subject to the three year limit on royalties as is the Baskin-Robbins ice cream maker; (3) whether the Trustee is entitled to royalties on the international sales of an ice cream maker that is similar to the Baskin-Robbins ice cream maker except for the brand name; and (4) whether attorneys' fees are due to either party.

The issues all involve interpretation of the parties' Agreement.  The Agreement provides that New York law will govern its interpretation.  (See Exhibit P-1 at § 12.6.)  "The essence of contract interpretation . . . is to enforce a contract in accordance with the true expectations of the parties in light of the circumstances existing at the time of the formation of the contract."  VTech Holdings Ltd. v. Lucent Techs. Inc., 172 F.Supp.2d 435, 441 (S.D.N.Y. 2001) (internal citations omitted).  A contract is to be enforced according to the plain meaning of its clear and unambiguous terms so as to give effect to the intent of the parties.  See Wallace v. 600 Partners Co., 86 N.Y.2d 543, 658 (N.Y. 1995).  See also Hanson v. McCaw Cellular Commc'ns, 77 F.3d 663 (2d Cir. 1996) (holding contract must be construed as a whole and the intention of the parties ascertained from the entire contract, not some isolated part).

A.   Pizza Maker

The Trustee asserts that he is entitled to royalties on the Chuck E. Cheese's pizza maker sold by Wham-O because it was a product in development at the time of the Agreement.  The Trustee's argument is based on the language of the Agreement which specifically states that "Pizza Maker" is one of the products being sold and that products in development are included in the assets being sold.  (See Exhibit P-1 at § 1.1(c) & Exhibit C.)

No documents were offered by the Trustee to prove the pizza maker was in development at the time of the sale to Wham-O. However, both the Debtor's former CEO, Mark Shepard, and Paul Rago, the founder of Shoot the Moon, Inc. ("STM"),[3] testified that the pizza maker was being developed before then.  The Debtor and STM had developed many toys together, including the Mrs. Field's cookie oven and the Baskin-Robbins ice cream maker.  When the Debtor developed a toy based on a concept brought to it by STM, it agreed to pay royalties to STM.[4]  Prior to the sale to Wham-O, STM approached the Debtor with the idea of a pizza maker with a brand name.  STM's representative testified that the pizza

_____

[3]   Wham-O called Paul Rago as a witness.

[4]   The Debtor had entered into two royalty agreements with STM in the past, for the Mrs. Field's cookie oven and the Baskin-Robbins ice cream maker.  Although the Debtor's representative testified that it would have paid STM a royalty on the pizza oven once it was developed, no written royalty agreement was executed.

maker was the logical next step in developing a food preparation toy that combined food kids like with a national brand they would recognize.  As an illustration of the concept, STM showed the Debtor a story-board depicting a pizza maker with the brand name Pizza Hut.  The Debtor said it was interested and instructed STM to obtain a brand license.  Although it approached several companies including Pizza Hut and Little Caesar's, STM was not able to obtain a license prior to the sale to Wham-O.

After the sale, STM brought toy ideas to Wham-O,[5] including the pizza maker concept.  In the initial discussion, STM used the same story-board with the Pizza Hut logo that it had used in its pitch to the Debtor.  Wham-O decided to proceed with the project.  Wham-O conducted a survey and determined that Chuck E. Cheese's had a high name recognition with kids.  Consequently, Wham-O sought and obtained a license from Chuck E. Cheese's for a pizza maker.  Wham-O's engineers then designed the Chuck E. Cheese's pizza maker.  On December 1, 1998, Wham-O executed a license agreement with STM granting it royalties on Wham-O's sales of the Chuck E. Cheese's pizza maker.  (See Exhibit P-16.)

---

[5]  Prior to the sale, STM and Wham-O had never done business together.  Pursuant to the Agreement, the royalty agreements between the Debtor and STM regarding the Mrs. Field's cookie oven and the Baskin-Robbins ice cream maker were assigned to Wham-O. (Exhibit P-1 at Exhibit B.)  After the sale, STM and Wham-O entered into an amended royalty agreement.  (Exhibit P-13.)

6

The Chief Financial Officer of Wham-O, Myra Hennessy, admitted that toy products typically take one to two years to develop. She testified that the first sales by Wham-O of the Chuck E. Cheese's pizza maker were in the second quarter of 1999 (slightly more than one year after the Agreement was signed). (See Exhibit P-9.) She admitted that the Agreement listed a pizza maker as one of the products being purchased and included products in development.

Wham-O argues nonetheless that no royalties are due because the Agreement included only a reference to "Pizza Maker" and that no pizza maker had, in fact, ever been made or sold by the Debtor prior to the Agreement. Wham-O contends that it should not have to pay any royalties because it is the one who came up with the idea to brand a pizza maker with the Chuck E. Cheese's name, obtained the license to do so, and did the engineering necessary to manufacture the product. Wham-O asserts that in its transition agreement with the Debtor there was no reference to a pizza maker and that, consequently, the Debtor had no actual involvement in the development of the Chuck E. Cheese's pizza maker.

Although Ms. Hennessy testified about a transition agreement with the Debtor, no such agreement was introduced into evidence. Therefore, the Court cannot consider its effect, if any, on the parties' obligations under the Agreement.

7

From the evidence presented by the parties, however, the Court concludes that the Chuck E. Cheese's pizza maker is the result of the pizza maker product that was in development by the Debtor at the time of the Agreement. It originated from the same concept developed by STM and pitched to the Debtor before the sale to Wham-O. The representatives of STM and the Debtor both testified that the parties were interested in pursuing the pizza maker concept which was the logical next step to the branded food toys which had previously been developed by them.

The language of the Agreement supports this conclusion. Section 1.1(c) of the Agreement defines the Products being sold to include "products under development." Further, Exhibit C to the Agreement lists "Pizza Maker" as one of the Products being sold. The other products listed all have brands associated with them. Therefore, the language of the Agreement relating to products in development clearly includes the pizza maker even though the Debtor had not fully developed, branded and sold a pizza maker by the time of the Agreement.[6]

Wham-O's argument that no royalties are due for the pizza maker because the Debtor had not actually created a pizza maker

---

[6] The Debtor also had a smoothie in development at the time. The smoothie's development was more advanced; it was in the stage of developing industrial designs and was covered by the Baskin-Robbins' license agreement. (Exhibit P-10.) Wham-O originally refused to pay royalties on that product. It relented later, however, conceding that the smoothie was covered by the Agreement.

at the time of the sale proves too much.  If the Debtor had no pizza maker in development at that time, then the parties would not have listed it in the Agreement as a product being sold.  The only logical conclusion is that there was a pizza maker in development by the Debtor at that time and it was being sold to Wham-O.[7]

The Agreement provides for royalties on all the products being sold, regardless of their stage of development.  Therefore, even assuming the bulk of the development of the Chuck E. Cheese's pizza maker was done by Wham-O after the sale, it agreed to pay royalties to the Debtor for that product.  See In re Community Med. Ctr., 623 F.2d 864, 866 (3d Cir. 1980) (holding that the court "will not make a different or better contract than the parties themselves saw fit to enter into.").

Wham-O also argues that an idea has to be novel in order for there to be consideration for the purchase of it.  See Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368, 376 (2d Cir. 2000).  It asserts that the "Pizza Maker" concept that the Debtor had developed at the time of the sale was not novel and, therefore, no compensation is due by Wham-O for that idea.  Id.

---

[7]  Mr. Shepard testified that the language in the Agreement was intentionally left vague because the parties wanted to assure that whatever pizza maker resulted from the product in development would be part of the sale.

The Trustee disagrees.  He contends that the Second Circuit noted in Nadel that the novelty requirement in submission-of-ideas cases is different from breach of contract claims.  Id. at 375.  In breach of contract cases, the Trustee argues, novelty is not a factor.  See, e.g., Apfel v. Prudential-Bach Secs., Inc., 81 N.Y.2d 470, 473 (1970).

In Apfel, the Defendant had entered into an agreement to pay royalties to the Plaintiff for an idea to sell bonds by book entry without the issuance of certificates.  Id. at 474.  After disclosing the idea and extensive negotiations, the parties entered into an agreement whereby the Defendant agreed to pay royalties to the Plaintiff for approximately five years.  Id. After using the idea and paying the Plaintiff for three years, the Defendant refused to pay more asserting that the idea was not novel but was in the public domain.  Id.  The Court rejected the Defendants' argument, concluding that the issue was not the novelty of the idea but whether there was consideration for the payments the Defendant agreed to make.  The Court noted that:

> When a seller's claim arises from a contract to use an
> idea entered into after the disclosure of the idea, the
> question is . . . whether the idea had value to the
> buyer and thus constitutes valid consideration.  In
> such a case, the buyer knows what he or she is buying
> and has agreed that the idea has value, and the Court
> will not ordinarily go behind that determination.  The
> lack of novelty, in and of itself, does not demonstrate
> a lack of value. . . .  The law of contracts would have
> to be substantially rewritten were we to allow buyers
> of fully disclosed ideas to disregard their obligation

10

> to pay simply because an idea could have been obtained
> from some other source or in some other way.

Id. at 475-78 (emphasis in original) (internal citations
omitted).

The Court finds the instant case analogous to the Apfel
case.  In both cases, the idea sold was disclosed to the buyer
before the contract was entered.  Consequently, traditional
principles of contract law apply and provide that parties "are
free to make their bargain, even if the consideration exchanged
is grossly unequal or of dubious value."  Id. at 475.  Novelty is
not determinative; Wham-O knew that a pizza maker was not a novel
concept.  The concept which the Debtor had developed (and was
selling to Wham-O) was to sell a pizza maker with a nationally
recognized brand.

Wham-O argues, however, that the pizza maker in development
by the Debtor at the time of the sale had no value as evidenced
by the fact that Wham-O allocated no part of the purchase price
to the pizza maker.  The allocation by Wham-O is irrelevant.
That allocation was Wham-O's alone and did not reflect any
agreement between the parties as to the value of the product sold
by the Debtor.  The Agreement reflected the parties' conclusion
that the products sold justified the payment of the royalties
described therein.

Consequently, the Court concludes that under the Agreement
the Trustee is entitled to royalties on the sales of the Chuck E.

11

Cheese's pizza maker which is the culmination of the product
which the Debtor had under development at the time of the sale.
The Court will direct the parties to calculate the exact amount
of royalties due.[8]

    B.   <u>Baskin-Robbins Products</u>

    The Agreement, as amended, provides for royalties on the
Baskin-Robbins ice cream maker at 1% of sales for three years;
royalties on all other products are 2% of sales for seven years.
The Trustee argues that, under the express language of the
Agreement, only the ice cream maker itself is subject to the
reduced royalty provision and that royalties on the accessories,
mixes and other Baskin-Robbins products are due for seven years
at 2%.

    Wham-O disagrees.  It argues that the reduced royalty
provision was meant to encompass all the Baskin-Robbins products.
Wham-O argues that this intent is evidenced by the opinion letter
issued by Gruntal & Co. ("Gruntal") at the request of the Debtor
at the time of the Agreement.  That letter prepared projections
of the royalty stream to be expected by the Debtor under the
Agreement and included all the Baskin-Robbins products at the
reduced royalty.

---

    [8]  Wham-O's exhibit shows total sales of the Chuck E.
Cheese's pizza maker and accessories from the date of the
Agreement through the first quarter of 2004 of $8,450,922.
(Exhibit P-9.)  Two percent of those sales is $169,018.44.

At the time of the oral argument on the Motion for Partial Summary Judgment, however, the Court concluded that there was no evidence that Gruntal was acting as an agent of the Debtor in preparing that report. Consequently, the Court could not conclude that its statement was an admission against interest of the Debtor. F.R.E. 801(d)(2). No evidence was presented at the trial to conclude otherwise. Therefore, the Court will not consider that report as evidence of the parties' intent.

Wham-O contends, however, that the language of the Agreement also supports its position because the Baskin-Robbins mixes, accessories, and smoothie/shake maker are all listed under "Baskin-Robbins Ice Cream Maker" in Exhibit C to the Agreement. Further, Wham-O notes that Baskin-Robbins ice cream maker is italicized in Exhibit C while the items listed below it are not. Wham-O contends this evidences the parties' intent to include them within the concept of the Baskin-Robbins ice cream maker. Wham-O asserts that the contract interpretation principle of noscitur a sociis teaches that a term which is part of a series should be interpreted like the other words in that series. See, e.g., 5 Corbin on Contracts § 24,28; Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961).

The Trustee disagrees with Wham-O's conclusion. He notes that in the same Exhibit the parties stated: "Yes!Girl line of products which is comprised entirely of the following products .

13

. . ."  A number of products are then listed.  If the parties had intended the Baskin-Robbins ice cream maker to include the items listed below it, the Trustee contends that they would have used similar language.  The language used, the Trustee notes, is logical because the Yes!Girl is not a separate product but a line of products, while the Baskin-Robbins ice cream maker is a separate product.

Further, the Trustee argues that the italicization of the Baskin-Robbins ice cream maker does not mean it is a "category" of products including those listed below it.  In the same exhibit, under the Yes!Girl line of products two of the items (Ms. Mega Mike and Ms. Yak!) are italicized.  Neither of them are categories but instead are only individual products.  Thus, the plain language of the contract, the Trustee contends, evidences that the parties did not intend that the Baskin-Robbins ice cream maker include the other items.

The Court agrees with the Trustee.  The express language of the Agreement states that only the Baskin-Robbins ice cream maker is to be subject to the reduced royalty provision.  Section 1.3(d) of the Agreement, as amended, provides for royalties of "two percent (2%) of the Net Sales of the Products by Purchaser, excluding the Baskin-Robbins Ice Cream Maker, from the Closing Date through the seventh anniversary of the Closing Date, and one percent (1%) of Net Sales of the Baskin-Robbins Ice Cream Maker

14

by Purchaser, from the Closing Date through the third anniversary of the Closing Date, which in no case shall exceed an aggregate of $5,500,000 ('the Royalty')."  The plain language of the contract evinces an intent to apply the reduced royalty only to the Baskin-Robbins ice cream maker.

The use of italics and listing of the other Baskin-Robbins products below the Baskin-Robbins ice cream maker does not convince the Court that those products were meant to be a part of the ice cream maker.  If that were the parties' intent, they would have expressed it.  In contrast to the Yes!Girl line of products, the Baskin-Robbins ice cream maker does not have language in the Exhibit specifying that the products listed below are included as part of it.  Further, the Baskin-Robbins ice cream maker is clearly a separate product from the smoothie/shake maker which is one of the items listed below it on Exhibit C to the Agreement.  (See Exhibit P-8.)  Therefore, the Court concludes that the Agreement evidences the parties' intent to treat the Baskin-Robbins ice cream maker as a separate product from the other Baskin-Robbins products.

Wham-O argues nonetheless that the other Baskin-Robbins products must be considered part of the Baskin-Robbins ice cream maker because the Debtor obtained only one license agreement from

Baskin-Robbins which covers all products sold under that brand.[9] That license agreement expressly included the recipes, mixes and other products sold under the Baskin-Robbins brand.

This, however, is a separate agreement between the Debtor and Baskin-Robbins. It does not shed light on the Agreement between Wham-O and the Debtor.

The Agreement between Wham-O and the Debtor provided for reduced royalties only for the Baskin-Robbins ice cream maker; it did not state the reduced royalties were for other Baskin-Robbins products or accessories. Therefore, the Court concludes from the plain language of the Agreement that the Trustee is entitled to royalties on the other Baskin-Robbins products at the rate of 2% of net sales for seven years from the Agreement. Once again, the parties should confer and provide the Court with that figure.[10]

C.   Food Fun Ice Cream Maker

The Trustee argues that he is entitled to a royalty on the international sales of the Food Fun ice cream maker because it is identical to the Baskin-Robbins ice cream maker except for the

---

[9]   The license agreement covered the sale of product in the United States and Canada. (Exhibit P-10.) The Debtor also obtained a license agreement from Baskin-Robbins for sale of products in Japan. (See Exhibit P-11.)

[10]   According to Exhibit P-9 sales of the Baskin-Robbins accessories from the date of the Agreement through the first quarter of 2004 totaled $12,910,610. Two percent of that figure is $258,212.20. Wham-O has, apparently, paid royalties of 1% on some of the Baskin-Robbins products. It is not clear, though, how much was paid.

brand name.  The Trustee asserts that Wham-O cannot evade its obligation to pay royalties by simply attaching a different name to a similar product.  See, e.g., Bucky v. Sebo, 208 F.2d 304 (2d Cir. 1953) (holding that one cannot make some change in a product to avoid the payment of royalties provided in licensing agreement); Russell Hardware & Implement Mfg. Co. V. Utica Drop Forge & Tool Co., 107 N.Y.S. 1144 (N.Y. App. Div. 1907) (holding that defendant evaded its agreement to pay royalties on staple pullers when identical device was sold under different name).

Wham-O disagrees.  It argues that the patent infringement cases cited by the Trustee are distinguishable from this case because there is no patent for an ice cream maker held by the Debtor which is being infringed by Wham-O.  Rather, the ice cream maker is generic.  Wham-O asserts that the Court must look to the parties' Agreement and conclude that no royalties are due on the Food Fun ice cream maker because it is not one of the listed Products on which royalties are calculated.  Even though Wham-O concedes that the Food Fun and Baskin-Robbins ice cream makers are similar,[11] it argues that it was permitted to sell an

---

[11]  Although Ms. Hennessy conceded that the Food Fun ice cream maker looked similar to the Baskin-Robbins ice cream maker, she stated that without looking at the engineering designs she could not be certain they were identical.  Although the Wham-O marketing pamphlets show some similarity, there are also some evident differences.  (See Exhibits P-5 & P-6.)

17

identical or similar toy so long as it did not contain a national food brand name.

The Court agrees with Wham-O.  The product sold under the Agreement was the Baskin-Robbins ice cream maker, not a generic or other non-national food brand ice cream maker.  Mr. Shepard testified that the Debtor did not sell non-branded food preparation toys.  The Debtor did not develop a new innovative ice cream maker on which it held a patent.[12]  The Debtor instead branded food preparation toys in order to improve their sales. The innovation was the branding, not the toy itself.  In fact, Mr. Shepard testified that the Mrs. Field's cookie oven sold by the Debtor was very similar to the Easy Bake Oven which had been sold by others for many years.

The Food Fun label is not a brand similar to Baskin-Robbins or Mrs. Field's, which are national brands selling food products outside the toy industry.  Wham-O developed Food Fun as a generic brand for toys.

There is no provision for the payment of any royalties on generic ice cream makers.  (Exhibit P-1 at §1.3(d).)  As a result, the Court concludes that under the Agreement Wham-O does not owe royalties on the Food Fun ice cream maker.

------

[12]  The cases cited by the Trustee are thus distinguishable because they all involved the licensing of technology subject to a patent.  See, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp., 258 F.2d 124 (2d Cir. 1958); Russell Hardware & Implement Mfg. Co. v. Utica Drop Force & Tool Co., 195 N.Y. 54 (1909).

The Trustee argues, alternatively, that Wham-O has no right to sell its Food Fun ice cream maker, because it was made using the Debtor's technology.  This is not correct.  Under the Agreement, the Debtor sold the tooling and other equipment used to manufacture the Baskin-Robbins ice cream maker to Wham-O, and Wham-O was free to use it however it wished.  Regardless of how it used it, the Agreement provided compensation to the Debtor in the form of royalties only on the sales of the Baskin-Robbins ice cream maker not on any generic ice cream maker that might be sold by Wham-O.

At the trial the Trustee introduced evidence that Wham-O was paying royalties to STM for the Food Fun ice cream maker. Apparently, the Trustee argues that this suggests that Wham-O concedes that similar royalties are due to the Debtor.  This is not correct.  Wham-O is paying royalties to STM pursuant to the terms of its agreement with STM, which is different from the Agreement at issue here.[13]

The Trustee further argues that the Agreement does not limit the royalties due to domestic sales only and that the sale of the Food Fun ice cream maker internationally therefore requires payment of royalties.  Wham-O counters that the Agreement only

---

[13]  STM and Wham-O entered into an amendment to the royalty agreements that the Debtor had assigned to Wham-O, which amendment includes royalties on certain non-branded products including an ice cream maker.  (Exhibit P-13.)

gave Wham-O the right to sell Baskin-Robbins ice cream makers in the domestic market and Japan because that is all that the Debtor was licensed to do.  (<u>See</u> Exhibits P-10, P-11 & P-12.)  Wham-O argues a fortiori that the Agreement provides for the payment of royalties only in those markets.

The Court agrees with Wham-O and concludes that, pursuant to the terms of the Agreement, the Debtor sold to Wham-O a product called the Baskin-Robbins ice cream maker and the license to use that name.  Though the Debtor also sold the tooling to make a generic ice cream maker, as well as the Baskin-Robbins ice cream maker, the Agreement provided that Wham-O had to pay royalties only on the sales attributable to the Baskin-Robbins ice cream maker.  Therefore, no royalties are due on sales of Wham-O's generic version sold under the Food Fun name.

D.    <u>Attorney's Fees</u>

Section 12.7 of the Agreement provides that, in any dispute under the Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees.  Both sides seek attorney's fees in this case under that provision.

The Court concludes that no attorney's fees are due because neither party prevailed in toto in this action.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court will enter judgment in favor of the Trustee against Wham-O and conclude that the Trustee is entitled to royalties at the rate of 2% of sales of the Chuck E. Cheese's pizza maker and the Baskin-Robbins accessories for seven years from the date of the Agreement.  The Court will deny the Trustee's request for royalties on the sale of the Food Fun ice cream maker and will deny both parties' request for attorney's fees.

An appropriate order is attached.


                                    BY THE COURT:


Dated: January 6, 2006

                                    Mary F. Walrath
                                    United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

Clerk of Court                                              824 Market Street
David D. Bird                                               Wilmington, DE 19801
                                                           (302) 252-2900

Date:  March 7, 2006

To:    **Peter Dalleo, Clerk**
       U.S. District Court
       District of Delaware
       U.S. Courthouse - 844 King Street
       Wilmington, DE 19801

Re:    Yes! Entertainment Corporation
       Adversary Case #03-50982 (MFW)

       Enclosed is the bankruptcy Record on **Appeal #AP-06-6.**  Please acknowledge receipt
on the copy provided.  A Cross-appeal was also filed appealing the Bankruptcy Court's 1/6/06
Memorandum Opinion and Order.  This cross-appeal is being transmitted to the District Court
under separate cover this date.

**Enclosed Items:**
**Notice of Appeal: #AP-06-6**
**Appealable Orders: Yes**
**Statement of Issues on Appeal: Yes**
**Appellants Designations: Yes**
**Appellee Designations: No**

                                              Sincerely,


                                              Barbara M. Torres, Deputy Clerk

___X_  Filing fee paid on_1/17/06_____
_____  Filing fee not paid


I hereby acknowledge receipt of the above record on appeal this _____ day of _____,
2005.

By: _____        C.A. No.:
        Deputy Clerk, U.S. District Court

## <u>TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT</u>

Bankruptcy Case Number: **99-00273**
Deputy Clerk Transferring Case: Barbara M. Torres  (302) 252-2900 x5135
Appeal #: **(AP-06-6)**
**Case Type: Adversary**

**Nature of Suit: 454** (To Recover Fraudulent Transfers)

**<u>Cause of Appeal:</u>**

Order and Memorandum Opinion entering judgment in favor of the Trustee of Yes!
Entertainment Corporation.  Signed on January 6, 2006, docket number 43. [Related documents
# 1, 5, 6, 42].  A Cross-Appeal was also filed appealing the Bankruptcy Court's 1/6/06
Memorandum Opinion and Order.  This cross-appeal is being transmitted to the District Court
under a separate cover this date.

| | |
|---|---|
| **Parties:** | Executive Sounding Board Associates, as trustee of the Yes! Entertainment Corporation Liquidating Trust **vs.** WHAM-0, Inc. |
| | |
| **<u>Debtors:</u>** | **Yes! Entertainment Corporation** |
| **<u>Counsel:</u>** | **Robert S. Brady, Esquire** |
| | Young Conaway Stargatt & Taylor LLP |
| | 1000 West Street, 17th Floor |
| | P.O. Box 391 |
| | Wilmington, DE 19899-0391 |
| **<u>Telephone:</u>** | 302-571-6690 |
| | |
| **<u>Appellant:</u>** | **WHAM-O, Inc.** |
| **<u>Counsel:</u>** | **Denise S. Kraft** |
| | Edwards Angell Palmer & Dodge LLP |
| | 919 N. Market Street |
| | 15th Floor |
| | Wilmington, DE 19801 |
| **<u>Telephone:</u>** | **(302) 425-7106** |
| | |
| **<u>Appellee:</u>** | **No Appellee designations filed** |
| **<u>Counsel:</u>** | |
| **<u>Telephone:</u>** | |